UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOSE ADAN BANUELOS,

       Petitioner,

v.                        Case No: 2:12-cv-373-FtM-29CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____

**OPINION AND ORDER**

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Jose Adan Banuelos ("Petitioner") who is presently confined at the Lake Correctional Institution in Clermont, Florida (Doc. 1). Petitioner, proceeding *pro* se, attacks the convictions and sentences entered by the Collier County Circuit Court for conspiracy to traffic in opiates and the sale or delivery of

_____

[1] There "is generally only one proper respondent to a given prisoner's habeas petition." Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). This is "the person with the ability to produce the prisoner's body before the habeas court." Id. at 435-36. When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the attorney general or some other remote supervisory official." Id. at 436 (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

heroin.  Id.   Respondent filed a response to the petition, and Petitioner filed a reply to the response (Doc. 5; Doc. 10).

Petitioner raises four claims in his petition.  He asserts that trial counsel was ineffective for: (1) failing to call three exculpatory witnesses at trial; (2) failing to raise a proper motion for judgment of acquittal; (3) failing to subpoena the phone records of a co-defendant; and (4) failing to convey a five-year plea offer from the state (Doc. 1 at 5-14).

Upon due consideration of the pleadings and the state court record, the Court concludes that the petition must be denied. Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See Rule 8, Rules Governing Habeas Corpus Petitions under Section 2254.

## I.   Background and Procedural History

On October 1-4, 2002, Petitioner was tried by a jury on one count of conspiracy to traffic in opiates and two counts of trafficking in opiates (Ex. 1).[2]  Petitioner was found guilty as charged on count one, guilty of the lesser included offense of sale or delivery of heroin on count two, and not guilty on count three (T. at 932).  On October 28, 2002, Petitioner was sentenced to twenty-five years in prison on count one and to a concurrent

---

[2] References to exhibits are to those filed by Respondent on October 9, 2012.  Citations to the trial transcript, located in exhibit one, will be (T. at __).

term of fifteen years in prison on count two (Ex. 2). Florida's Second District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences on November 14, 2003 (Ex. 5); <u>Banuelos v. State</u>, 864 So. 2d 407 (Fla. 2d DCA 2003).

On September 11, 2004, Petitioner filed a state petition for writ of habeas corpus in which he raised three claims of ineffective assistance of appellate counsel (Ex. 7). The petition was denied on August 10, 2005 (Ex. 8).

On November 21, 2005, Petitioner filed a post-conviction motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") in which he raised several claims of ineffective assistance of trial counsel (Ex. 9). The post-conviction court denied two of the claims and ordered an evidentiary hearing on the remaining claims (Ex. 11). After the evidentiary hearing (Ex. 12), the post-conviction court denied the remaining claims (Ex. 13). Florida's Second District Court of Appeal *per curiam* affirmed (Ex. 17); <u>Banuelos v. State</u>, 92 So. 3d 827 (Fla. 2d DCA 2012).

## II.  <u>Governing Legal Principles</u>

### A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  This standard is both mandatory and difficult to meet.  White v. Woodall, 134 S. Ct. 1697, 1702 (2014).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155. Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

state-court proceeding[.]" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003) (dictum).  When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see, e.g.</u>, <u>Burt v. Titlow</u>, 134 S. Ct. 10, 15-16 (2013); <u>Miller-El</u>, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").

**B.  Standard for Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. <u>Id.</u>  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. <u>Burt</u>, 134 S. Ct. at 13 (citing <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89. In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

III. **Analysis**

    A.   **Claim One**

Petitioner asserts that trial counsel was ineffective for failing to call as defense witnesses Don McKnight, Alicia Rivas, and Arcelia Meztas (Doc. 1 at 5).[3] Petitioner asserts that the state's case was based solely upon circumstantial evidence and that these witnesses would have "overcome the burdens caused by the state in their case in chief." Id. at 6.

Petitioner does not explain in the instant petition how these witness' testimony may have helped him, but in his Rule 3.850 motion, he urged that McKnight could have testified that the individual who sold him heroin didn't say or know anything.  He also argued that Rivas and Meztas would have testified that Alicia Rivas' husband (co-defendant Alvaro Rivas) had called Alicia and told her to ask Petitioner to do him a favor (Ex. 9 at 5-7). Presumably, these witness' testimony would have supported Petitioner's defense that he did not know the illicit nature of the package's contents when he sold a package of heroin to McKnight and an undercover police officer on May 14, 2001. Id. at 12-13.[4]

_____

[3] The names of these witnesses are spelled inconsistently throughout the pleadings in this case. To avoid confusion, this Court will use the spellings provided by Petitioner in the instant petition.

[4] Petitioner's defense theory on count two was that he had no knowledge of a pre-arranged deal between a confidential informant, an undercover officer, and his brother-in-law (Alvaro Rivas) for

Petitioner raised this claim in his Rule 3.850 motion, and an evidentiary hearing was held.   At the hearing, Alicia Rivas testified that a few days before Petitioner's arrest, she received a phone call at her home (Ex. 12 at 413-14).   After receiving the call, she went to Arcelia Meztas' home, where Petitioner was visiting, and delivered a message to Petitioner from her husband. Id. at 414.   She then brought Petitioner back to her house. Id. at 415.

Arcelia Meztas testified that a few days before Petitioner's arrest, Alicia Rivas came to her house where Petitioner was visiting.   Alicia told Petitioner that Alvero Rivas had called, and she and Petitioner left (Ex. 12 at 423).

Confidential informant Don McKnight testified that he purchased heroin from a man named George[5] for about six months to a year in 2001 (Ex. 12 at 426).   McKnight testified that George was out of town for the May 14, 2001 transaction, but he made arrangements for McKnight to pick up the drugs. Id. at 430-31. Upon arrival at George's house, a man on crutches took McKnight and an undercover police officer to a back bedroom where the

---

the sale of drugs.   At trial, Petitioner offered the testimony of co-defendant Alvaro Rivas (Petitioner's brother-in-law) who stated that he asked Petitioner to hand over a package to two men.   Rivas testified that he "never told [Petitioner] anything about drugs. Simply only to please do me that favor and those persons were going to leave him $1,000." (T. at 726).

[5] The prosecution's theory was that "George" was Alvero Rivas.

transaction took place. Id. at 433-34. McKnight testified that the man on crutches did not appear to know what was going on. Id. at 443.[6]

Defense counsel, John McGowan ("McGowan") testified that Petitioner had not provided him with the names of any exculpatory witnesses (Ex. 12 at 488, 493). Petitioner admitted that he had not provided McGowan with Meztas' name and could not remember whether he had asked counsel to call Alicia Rivas as a witness, but asserted that his failure to provide McGowan with these witness' names was because, as a native Spanish speaker, he could not communicate very well with McGowan. Id. at 458, 460. However, McGowan testified that he was able to communicate with Petitioner in English. Id. at 488. McGowan told the post-conviction court that Petitioner spoke English to him, wrote him letters, and told him what happened. Id. at 515. McGowan had no question in his mind that Petitioner could communicate in and understood English. Id. at 496.

McGowan also testified at the evidentiary hearing that although he did not specifically remember discussing Don McKnight with Petitioner, McKnight was listed as an informant for the State

---

[6] McKnight did not recognize Petitioner at the evidentiary hearing (Ex. 12 at 426). However, Alicia Rivas testified that Petitioner, who is her brother, was staying at her house because he had been involved in a car accident and was on crutches at the time. Id. at 410.

of Florida, had been previously deposed and gave sworn statements that were provided in discovery, and McGowan "certainly wasn't going to call Mr. McKnight as a witness for Mr. Banuelos." (Ex. 12 at 491).  McGowan noted that he "frankly, knew what [McKnight] was going to say at that time and it was not to be exculpatory for Mr. Banuelos." Id. at 500.

After hearing the testimony from these witnesses, the post-conviction court specifically concluded that Petitioner spoke and understood English well enough to communicate with his attorneys. Id. at 519. The post-conviction court also concluded that Petitioner had not demonstrated prejudice and declined to "second-guess" McGowan's performance. Id. at 519.  Florida's Second District Court of Appeal per curiam affirmed (Ex. 17).

Petitioner does not explain how the state court's denial of this claim was contrary to, or an unreasonable application of, Strickland.  The post-conviction court's ruling that Petitioner understood English was a factual determination from the state court that is presumed correct on habeas review. 28 U.S.C. § 2254(e)(1). The burden is on Petitioner to rebut the presumption by clear and convincing evidence, which Petitioner has not presented. Id.

McGowan cannot be deemed ineffective for failing to call witnesses of whom he was unaware.  Moreover, McGowan cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial

strategy." Darden v. Wainwright, 477 U.S. 168, 186 (1986). McGowan's determination that McKnight would not have been a good witness for the defense was a strategic decision that is entitled to deference on habeas review. Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004) (calling witnesses is a strategic choice); Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess"); Blanco v. Singletary, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel").

Finally, Petitioner has not explained how the testimony of Alicia Rivas and Arcelia Meztas would have benefitted him.  Co-defendant Alvaro Rivas testified at trial that he personally asked Petitioner to give the package to two men in exchange for $1000 (T. at 726).  Petitioner now asserts that Alicia Rivas and Arcelia Meztas would have testified that Alvero Rivas actually asked Alicia Rivas to ask Petitioner to exchange the package with the two men for $1000.  Petitioner does not explain how the discrepancy in the identity of who actually delivered the message to Petitioner undermines confidence in the outcome of his trial. Strickland, 466 U.S. at 694.  Claim one fails on both prongs of Strickland and is denied pursuant to 28 U.S.C. § 2254(d).

## B.    Claim Two

Petitioner asserts that counsel was ineffective for failing to properly raise a motion for judgment of acquittal on count two (Doc. 1 at 7).  Specifically, Petitioner argues that the state did not prove that Petitioner had knowledge of the illicit contents of the package he handed over to McKnight and an undercover police officer on May 14, 2001. Id. at 9.[7]  Presumably then, the state could not have proven the required element of intent to support Petitioner's conviction for sale or delivery of heroin.

Respondent asserts that this claim is unexhausted and procedurally defaulted because Petitioner did not raise it in state court (Doc. 5 at 9-10).  Instead, the only ineffective assistance of counsel claim regarding the motion for a judgment of acquittal was an assertion that counsel was ineffective for failing to argue in the motion that certain evidence relied upon by the state was inadmissible. Id.  Upon review of the pleadings, the Court concludes that Petitioner's failure to exhaust this claim in the state courts precludes federal habeas review.

As noted, procedural default will be excused in only two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show cause for

---

[7] Petitioner asserts that the transaction at issue took place on May 14, 2002 whereas the testimony at trial indicates that the transaction occurred on May 14, 2001 (Doc. 1 at 9; T at 465).

the default and actual prejudice resulting from the default.   In Martinez v. Ryan, 132 S. Ct. 1309 (2012), the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Id. at 1320.[8]   Even under Martinez, however, Petitioner cannot show cause to excuse the procedural default of claim two because he still must establish that his underlying ineffective assistance claim is "substantial." Martinez, 132 S. Ct. at 1318-19.   He has not met this requirement for overcoming the procedural default; Petitioner has failed to show that his underlying ineffective assistance claim has "some merit." Id. at 1318.

Under Florida law, a motion for judgment of acquittal is designed to challenge the legal sufficiency of the evidence. State v. Williams, 742 So. 2d 509, 510 (Fla. 1st DCA 1999).   If the State presents competent evidence to establish each element of the crime, a motion for judgment of acquittal should be denied. Id. at

---

[8] In 2013, the Supreme Court confirmed that the Martinez ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013).

- 14 -

510. A trial court may not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt. Id.  In moving for a judgment of acquittal, a defendant admits not only the facts stated in the evidence, but also every reasonable conclusion favorable to the State that the fact finder might fairly infer from the evidence. Williams, 742 So. 2d at 510 (citing Lynch v. State, 293 So. 2d 44, 45 (Fla. 1974)).

In the instant case, the state presented the testimony of undercover police officer John Poling ("Poling").  Poling testified that on May 14, 2001, he and McKnight drove to a residence in Clermont, Florida where he was met in the driveway by Petitioner (T. at 474).  Poling testified:

> STATE:    Did you or Mr. McKnight engage Jose Banuelos in any conversation about why you were there?
>
> POLING:   Yes, we discussed it.  After a short period of time it was determined that we discussed cocaine which they said they had none of, then we discussed purchasing I'm not sure if he referred to cocaine, a lot of time, other, black, opium.  It was determined he had $1,000 worth.
>
> Q.        Was there some conversation about a lesser amount?
>
> A.        Yes, sir.  I tried to – I asked if I can purchase $400 worth.  I was advised they couldn't cut it or break it down to a smaller amount.
>
> Q.        Who told you that?

> A.      Carlos, or Jose Banuelos.
>
> Q.      And when he told you he couldn't
>         break it down, what did you ask him?
>
> A.      I asked him how much I was going to
>         get for $1,000.
>
> Q.      Did he respond to this question?
>
> A.      Ten. One gram roughly.
>
> Q.      That's what he said?
>
> A.      I believe he said ten was the word.

(T. at 475-76).   The testimony from Officer Poling was competent evidence from which the jury could reasonably infer Petitioner's knowledge that he was engaging in the sale of an illegal substance. Accordingly, even had counsel raised this particular argument in his motion for a judgment of acquittal, the trial court could not have granted it. <u>Williams</u>, 742 So.2d at 510.   Therefore, this claim would not satisfy <u>Strickland</u>'s prejudice prong.

Petitioner has not shown that claim two is "substantial" so as to excuse his procedural default of the claim.   Nor has Petitioner presented "new and reliable" evidence to demonstrate the applicability of the actual innocence exception to the procedural bar. <u>See</u> <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998). Claim two is dismissed as unexhausted and procedurally barred.

**C.   Claim Three**

Petitioner asserts that counsel was ineffective for failing to subpoena the May 14, 2001 telephone records of co-defendant

John Torres (Doc. 1 at 9).  Petitioner urges that had counsel obtained the records, it would have refuted testimony from Officer Poling that John Torres telephoned Petitioner on May 14, 2001 to alert him that Poling and McKnight were going to purchase drugs from Petitioner. Id. at 10.

Petitioner raised this claim in his Rule 3.850 motion, and after an evidentiary hearing, the post-conviction court denied relief (Ex. 12 at 519; Ex. 13).  The denial was *per curiam* affirmed by Florida's Second District Court of Appeal (Ex. 17).  Petitioner does not explain how the state court's rejection of claim three was contrary to Strickland or was based upon an unreasonable determination of the facts.  Upon review of the record, the Court concludes that Petitioner has not stated a claim upon which habeas relief can be granted.

At trial, Officer Poling testified that prior to his May 14, 2001 drug purchase from Petitioner, co-defendant John Torres made a telephone call in the presence of Polling and McKnight (T. at 471).  Torres spoke Spanish to the call's recipient. Id.  Poling admitted that he did not know what was said, but testified that after the call, Torres advised him and McKnight "they [were] waiting for us at the residence." Id. at 472.  At the evidentiary hearing, Poling admitted that he did not investigate the identity of the person Torres had called (Ex. 12 at 475).

At the evidentiary hearing, McGowan testified that he had not subpoenaed Torres' cell phone records to discern the identity of the individual Torres had called because Petitioner told him that the person who contacted him to arrange the May 14, 2001 drug deal was his co-defendant Alvaro Rivas so there was no reason to subpoena Torres' phone records (Ex. 12 at 493-94).

It is unclear to the Court how the identity of the recipient of Torres' May 14, 2001 telephone call would aid Petitioner. At no point was it represented at trial that Torres directly called Petitioner, and testimony was presented at trial that Alvaro Rivas, not Torres, contacted Petitioner to arrange the May 14, 2001 transaction (T. at 726).   Moreover, Petitioner has offered no evidence regarding the identity of the recipient of Torres' call or even asserted that the records would have been available for subpoena.   Indeed, no evidence has been offered regarding the contents of the call.   Any argument by Petitioner that the records would have been exculpatory in some manner is speculative and cannot support a claim of ineffective assistance of counsel. See Aldrich v. Wainwright, 777 F.2d 630, 636 (11th Cir. 1985) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

Because Petitioner has not demonstrated that the post-conviction court's adjudication of this claim was contrary to

Strickland or based upon an unreasonable determination of the facts, claim three does not warrant federal habeas relief. 28 U.S.C. § 2254(d).

**D.   Claim Four**

Petitioner asserts that counsel was ineffective for failing to convey a five-year plea offer to him before trial (Doc. 1 at 12).  Petitioner raised this claim in his Rule 3.850 motion, and after an evidentiary hearing, the claim was denied by the post-conviction court, both at the conclusion of the hearing, and in a written order (Ex. 12 at 520; Ex. 13).  The denial was *per curiam* affirmed (Ex. 17).

In its written order on this issue, the post-conviction court stated:

> Defendant's trial counsel, Mr. McGowan, testified at the hearing that the Defendant spoke, understood, and could write correspondence in English, and that he had no trouble communicating with Defendant. Additionally, Mr. McGowan stated that he did convey the five year plea offer that was not contingent upon Defendant's testimony against his co-defendants, but that Defendant refused to enter a plea.  Mr. McGowan stated that he visited Defendant a second time, with another attorney who spoke Spanish, Mr. Joseph Torres, so that Mr. Torres could convey the five year plea offer to Defendant in Spanish and try to convince him to accept the offer.  Defendant again chose to continue to trial with his case.  Defendant admitted during his testimony at the hearing that Mr. Joseph Torres did come to the jail to speak to him but he did not recall talking about the plea offer of five years.

> At the conclusion of the evidentiary hearing, having considered all the testimony and evidence presented at the hearing, the Court ruled that Defendant failed to demonstrate how trial counsel's performance was deficient, therefore, failing to establish both prongs of the Strickland test.  In addition, the Court ruled that Defendant speaks and understand[s] English well enough to communicate with his attorneys and that the plea offer of five years without testimony was, in fact, conveyed to Defendant.

(Ex. 13 at 337-38).  Petitioner does not explain how the state court's adjudication of this claim was contrary to Strickland or was based upon an unreasonable determination of the facts. Rather, he complains that "the lower court weighted the validity of counsel's testimony over the petitioner." (Doc. 1 at 13).  Upon review of the record, the Court concludes that Petitioner has not stated a claim upon which habeas relief can be granted.

At the evidentiary hearing, McGowan testified that shortly before trial, the state made a five-year plea offer (Ex. 12 at 494).  McGowan testified that he went to the jail to convey the offer, but Petitioner would not accept it. Id.  The next day, McGowan returned to the jail with another attorney, Joseph Torres, who spoke Spanish, in hopes that Torres could persuade Petitioner to accept the state's offer.  Id.   McGowan testified that Petitioner said that he would not plea to anything. Id. at 495. In contrast, Petitioner testified that although he remembered that McGowan brought a Spanish speaking attorney to the jail on one

occasion, he did not recall being offered a five-year plea deal (Ex. 12 at 457).   The post-conviction court recognized that the testimony of McGowan was in direct conflict with that of Petitioner, but concluded that Petitioner knew about the state's five-year offer, but decided to turn in down. Id. at 520.

The credibility and demeanor of a witness are questions of fact.  Freund v. Butterworth, 165 F.3d 839, 862 (11th Cir. 1999). The AEDPA affords a presumption of correctness to a factual determination made by a state court, and the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).   Moreover, determining the credibility of a witness, "is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y for Dep't of Corr., 664 F.3d 842, 845 (11th Cir. 2011); see also Gore v. Sec'y for Dep't of Corr., 492 F.3d 1273, 1300 (11th Cir. 2007) (recognizing that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing Rice v. Collins, 546 U.S. 333, 341–42 (2006) ("[r]easonable minds reviewing the record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")). Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial

court, but not by them." <u>Marshall v. Lonberger</u>, 459 U.S. 422, 434 (1983).

Petitioner has not shown by clear and convincing evidence that the post-conviction court unreasonably concluded that McGowan, with the aid of Joseph Torres, conveyed the five-year plea offer to Petitioner.  Accordingly, Petitioner is not entitled to federal habeas relief on claim four.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV. <u>Certificate of Appealability</u>[9]

Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability ("COA").  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional

---

[9] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." <u>Id.</u>  As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El, 537 U.S. at 335-36. Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.    The Florida Attorney General is **DISMISSED** as a named Respondent.

2.    The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Jose Banuelos (Doc. 1) is **DENIED**.

3.    Petitioner is **DENIED** a certificate of appealability.

4.    The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this __13th__ day of January, 2015.

_John E. Steele_

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Jose Banuelos
Counsel of Record